# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| WESTERN THRIFT & LOAN, | Civil No. 11-cv-3644 (JNE/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| SEBASTIAN RUCCI, | |
| Defendant. | |

Thomas P. Kane & Shushanie E. K. Liesinger, Hinshaw & Culbertson LLP, 2000 Accenture Tower, 333 South Seventh Street, Minneapolis, MN 55402, for Plaintiff; and

Sebastian Rucci, 401 East Ocean Boulevard, Suite 1040, Long Beach, CA 90802, *pro se* Defendant.

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Plaintiff Western Thrift and Loan's ("Western Thrift") Motion for Summary Judgment (ECF No. 47). This motion has been referred to the Magistrate Judge for report and recommendation to the district court under 28 U.S.C. § 636 and Local Rule 72.2(b). The parties consented to a waiver of the hearing. (ECF No. 65.) Based upon the memoranda, and all the files, records and proceedings herein, this Court will recommend that Plaintiff's Motion for Summary Judgment (ECF No. 47) be denied and this action be dismissed with prejudice.

## I. BACKGROUND

### A. The Underlying Action

In October 2007, R & D Financial Solutions, Inc., together with its owners Dan Pullis, and Robert Maki (collectively, "Underlying Plaintiffs") commenced a suit against Homeowners Lending Corporation ("Homeowners") and Western Thrift (collectively, "Underlying Defendants"), in the United States District Court for the District of Minnesota, Court Filing No. 07-CV-4306 DSD/JJG ("Underlying Action"). (ECF No. 51-1.) Western Thrift's chief legal counsel, Mark Trafton, hired Aaron Davis of Patterson, Thuente, Skaar, and Christensen, P.A. ("Patterson Thuente") to represent the Underlying Defendants. (Compl. ¶ 15, ECF No. 1.) Pursuant to the service agreement between Western Thrift and Homeowners, Trafton instructed Homeowners to "defend, indemnify and hold Western Thrift harmless with respect to the Underlying [Action]." (Compl. ¶ 17; *see* ECF No. 51-2, ¶ 7.5.) According to Western Thrift, Homeowners assumed full responsibility of defending the Underlying Action. (Compl. ¶ 18.)

### B. Rucci's Representation of Western Thrift

In February 2009, Homeowners fired Patterson Thuente and hired Defendant Sebastian Rucci to represent the Underlying Defendants. (*Id*. ¶ 19.) Rucci understood that he was hired to represent both Homeowners and Western Thrift. (Rucci Dep. 209:22-25, ECF No. 51-8; *see* Compl. ¶¶ 21-22.) Western Thrift paid Rucci a retainer fee on March 24, 2009 and June 30, 2009. (ECF No. 51-34 at 2-3.) After Rucci was hired, Western Thrift alleges it received no further communication concerning the Underlying Action until it received a motion for default judgment from the Underlying Plaintiffs in

January 2010. (Compl. ¶ 25.) During his time as Western Thrift's legal representative in the Underlying Action, Rucci never attempted to contact Western Thrift. (*See* Rucci Dep. 82:19-87:2.)

Meanwhile, Rucci encountered difficulty being admitted pro hac vice in the District of Minnesota. (Compl. ¶¶ 27-33.) On March 24, 2009, Rucci filed a motion for admission pro hac vice. (*Id.* ¶ 27.) Magistrate Judge Graham denied Rucci's motion and required Rucci to obtain local counsel in accordance with Local Rule 83.5. (ECF No. 51-12 at 3.) Rucci was unable to obtain local counsel, and Judge Graham denied Rucci's request for additional time. (ECF No. 51-14 at 2.) At no point did Rucci contact Western Thrift to notify it that he was not admitted in Minnesota. (Rucci Dep. 136:10-137:16.) Rucci believed that Homeowners was keeping Western Thrift informed of the proceedings. (*Id.*)

Rucci decided to take a different tack. On May 14, 2009, Homeowners filed for bankruptcy in the Central District of California, which caused an automatic stay in the Underlying Action under 11 U.S.C. § 362(a). (ECF No. 51-15 at 2.) Rucci hoped to remove the Underlying Action to the Central District of California, where Rucci is admitted to practice law and could commence defending Western Thrift. (Rucci Dep. 132:1-133:11.) The Underlying Plaintiffs moved to remand the Underlying Action to the District of Minnesota. (Compl. ¶ 36.) On September 1, 2009, Bankruptcy Judge Robert Kwan granted the Underlying Plaintiffs' motion, and the Underlying Plaintiffs informed Judge Graham that the Underlying Action had been remanded to Minnesota and the automatic stay had been lifted. (ECF No. 51-27 at 2, 5.) Rucci never notified Western

Thrift of Homeowners' bankruptcy proceedings and his plans to remove the Underlying Action to the Central District of California. (Rucci Dep. 176:16-178:2.) Rucci believed that Western Thrift would have been notified of the bankruptcy proceedings as Homeowners' creditor. (*Id.*)

After the stay was lifted and the Underlying Action recommenced in Minnesota, Rucci took no further part in the litigation, despite the fact that he was still the Underlying Defendants' attorney of record. (*Id.* 159:14-160:18.) At this point, Homeowners was in bankruptcy; because Western Thrift was listed as a creditor in Homeowners' bankruptcy action, Rucci believed that his continued simultaneous representation of both Homeowners and Western Thrift would have constituted a conflict of interest. (*Id.* 183:6-184:17.) Rucci never contacted Western Thrift to inform it of the conflict. (*Id.* 188:5-16.)

### C. Motion for Default Judgment

Neither Rucci nor Western Thrift attended the pretrial conference for the Underlying Action. (Order Granting Default J. 5, ECF No. 51-32.) The Underlying Plaintiffs subsequently moved for default judgment against all Underlying Defendants on January 21, 2010. (*Id.* at 4.) Unlike previous correspondences, this motion was served directly to Western Thrift. (ECF No. 51-31 at 4.) The motion "completely surprised Western Thrift," as it was the first notification Western Thrift received of the Underlying Action since Homeowners retained Rucci. (Compl. ¶ 42.) At this point, Trafton contacted Rucci and arranged for Western Thrift's current counsel to enter an appearance for the Underlying Defendants. (*Id.* ¶ 43.)

Western Thrift then filed a memorandum opposing the motion for default judgment, arguing that default judgment was inappropriate because "it mistakenly believed that it was represented by counsel." (ECF No. 51-16 at 14.) On May 10, 2010, Judge Doty granted default judgment against Western Thrift, noting that "a party is responsible for the actions and conduct of his counsel." (Order Granting Default J. 5-6.) The Court "impute[d] Rucci's failure to defend [the Underlying Action] to Western Thrift" and entered default judgment against Western Thrift. (*Id.* at 6.)

On February 18, 2011, Judge Doty found the Underlying Defendants jointly and severally liable to the Underlying Plaintiffs for damages in the amount of $98,891.52. (ECF No. 51-33 at 25.) In addition, the Underlying Defendants were jointly and severally liable for the Underlying Plaintiffs' costs and attorneys' fees in the amount of $150,781.80. (*Id.*) Western Thrift subsequently entered into a settlement agreement with the Underlying Plaintiffs in the amount of $215,000. (ECF No. 51-36.)

### D. The Present Action

On December 20, 2011, Western Thrift filed a the instant suit against Rucci, alleging negligence and breach of contract stemming from Rucci's representation of Western Thrift in the Underlying Action. (Compl. ¶¶ 50-59). Specifically, Western Thrift alleges that Rucci's negligent representation and breach of the contract for legal representation caused Western Thrift to have a default judgment entered against it in the Underlying Action. (*Id.* ¶¶ 44-45.)

As part of its pleading materials, Western Thrift moved for a declaration that expert review of the merits of its case was unnecessary or, in the alternative, that the

expert affidavit requirement of Minn. Stat. § 544.42, subd. 3(c) be waived. (ECF No. 2.) Judge Ericksen denied Western Thrift's motion and ordered Western Thrift to submit an affidavit stating that the case had been reviewed by an expert in compliance with Minn. Stat § 544.42, subd. 2, cl.(1) within sixty days. (Order at 9, July 31, 2012, ECF No. 42.) The Court also ordered Western Thrift to submit an affidavit stating "a summary of the grounds for [the expert's] opinion" in compliance with Minn. Stat § 544.42, subd. 2, cl.(2), within 180 days. (*Id.*) Western Thrift obtained an expert affidavit from Patrick H. O'Neill, Jr. on September 20, 2012 ("O'Neill Affidavit"); there is no evidence in the record, however, that the affidavit was served on Rucci within the timeframe set by Judge Ericksen's July 31 Order. (*See* O'Neill Aff., ECF No. 51-37; *see also* Pl.'s Reply Mem. 13, ECF No. 61 (alleging that the O'Neill Affidavit was served on September 25, 2012).)

### E. The Instant Motion

On January 30, 2013, Western Thrift filed the instant Motion for Summary Judgment on its negligence and breach of contract claims. It argues that Rucci committed attorney malpractice and breached his contract with Western Thrift by negligently representing Western Thrift in the Underlying Action. (Pl.'s Mem. in Supp. 1, ECF No. 50.) Specifically, Western Thrift argues that "even though [it] had a meritorious defense [in the Underlying Action], this Court entered default judgment against [it] on a punitive basis, because of Rucci's failures." (*Id.*)

Rucci opposes the motion, asserting that his conduct was not negligent because he employed a legitimate litigation strategy and he could no longer represent Western Thrift after the Underlying Action was remanded to Minnesota due to a perceived conflict of

interest. (Def.'s Mem. in Opp'n 19, ECF No. 57; Rucci Dep. 183:6-184:17.) Rucci also argues that his negligence did not proximately cause Western Thrift's damages because (1) Western Thrift failed to monitor its involvement in the Underlying Action, and (2) Western Thrift knew that Rucci was unable to be admitted in Minnesota. (Def.'s Mem. in Opp'n 13-17.) Rucci also argues that this action should be dismissed because Western Thrift failed to serve him with an expert affidavit as required by Minn. Stat. § 544.42. (Def.'s Mem. in Opp'n 17-19.)

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant has the burden of demonstrating that no genuine issue of material fact remains to be decided. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When a motion for summary judgment has been made and supported by the pleadings and affidavits, the burden shifts to the party opposing the motion to demonstrate that a disputed issue of material fact remains. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### B. Western Thrift's Negligent Malpractice Claim

To succeed on its negligent malpractice claim, Western Thrift must show: (1) the existence of an attorney-client relationship between Western Thrift and Rucci;

(2) Rucci's acts constituted negligence; (3) Rucci's acts were the proximate cause of Western Thrift's damages; and (4) but for Rucci's conduct, Western Thrift would have been successful in its defense of the Underlying Action. *See Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686, 692 (Minn. 1980).

In his memorandum opposing the instant Motion, Rucci renews his argument from his earlier motion to dismiss that Western Thrift's malpractice claim must be dismissed with prejudice because Western Thrift has not served him with an affidavit of expert review in compliance with § 544.42 and Judge Ericksen's July 31, 2012 Order. In her order denying Rucci's Motion to Dismiss, Judge Ericksen ordered that Western Thrift had 60 days to serve Rucci with an affidavit of expert review as required by § 544.42, subd. 2, cl. (1). (Order at 9, July 31, 2012.)

Western Thrift asserts that it complied with the July 31 Order. *See* Pl.'s Reply Mem. at 13 (citing Leisinger Aff. Ex. 37, ECF No. 51-37). The document on which Western Thrift relies to prove that assertion, however, shows only the date on which O'Neill swore to the truth of the statements contained in the affidavit. *See* Leisinger Aff. Ex. 37. The record contains no certificate of service or other documentation of any kind attesting to the fact that Rucci was served with the O'Neill Affidavit within 60 days of July 31, 2012.

Where a party fails to comply with statutory expert-disclosure requirements of § 544.42, the result is mandatory dismissal. Minn. Stat. § 544.42, subd. 6 ("Failure to comply with subdivision 2, clause (1) . . . results . . . in *mandatory dismissal* of each cause of action *with prejudice* as to which expert testimony is

necessary to establish a prima facie case.") (emphasis added). In *Broehm v. Mayo Clinic Rochester*, the Minnesota Supreme Court emphasized the importance of strict compliance with statutory expert-disclosure requirements for medical-malpractice actions under § 145.682. 690 N.W.2d 721, 726 (Minn. 2005); *see also Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420 (Minn. 2002) (affirming dismissal with prejudice of plaintiff's medical malpractice claims for failing to provide sufficient expert affidavits as required by Minn. Stat. § 145.682). These statutory requirements are equally strict in claims arising under § 544.42. *See House v. Kelbel*, 105 F. Supp. 2d 1045, 1052-53 (D. Minn. 2000) (comparing § 544.42 to § 145.682 for purposes of analyzing statutory expert-disclosure requirements); *Middle River-Snake River Watershed District v. Dennis Drewes, Inc.*, 692 N.W.2d 87, 90-92 (Minn. Ct. App. 2005) (same). Here, Western Thrift had 60 days from the denial of its Motion for Wavier to meet the requirements of § 544.42, subd. 2, cl (1). It has put forth no evidence that is sufficient to carry its burden of proving that service as required by § 544.42, subd. 2, cl (1) occurred. Based on Judge Ericksen's determination that § 544.42 applies in this case, and given Western Thrift's failure to comply with the provisions of the statute and Judge Ericksen's July 31, 2012 Order, the Court will recommend that Western Thrift's malpractice claim be dismissed with prejudice.

    C.    **Western Thrift's Breach-of-Contract Claim**

Western Thrift also asserts a malpractice claim against Rucci for breaching an implied contract for representation. To succeed on this claim, Western Thrift must prove the same elements that it would have to prove for its negligent

malpractice claim: (1) the existence of an attorney-client relationship between Western Thrift and Rucci; (2) Rucci's acts constituted breach of contract; (3) Rucci's breach was the proximate cause of Western Thrift's damages; and (4) but for Rucci's breach, Western Thrift would have been successful in its defense of the Underlying Action. *See Togstad*, 291 N.W.2d at 692.

The allegations supporting Western Thrift's breach-of-contract claim, however, are identical to those supporting its negligent-malpractice claim: Rucci agreed to represent Western Thrift; Rucci was unable to be admitted to practice before this Court pro hac vice, failed to communicate with Western Thrift, failed to arrange for substitute counsel, and failed to notify either Western Thrift or the court that he was no longer representing Western Thrift; and this breach was the proximate and but-for cause of Western Thrift's damages. In Minnesota, negligent legal malpractice and breach of the attorney/client contract are different names for the same cause of action; "the proof required in a legal malpractice claim is the same as that required to prove breach of contract." *DeMartini v. Stoneberg, Giles, & Stroup, P.A.*, No. A11-649, 2011 WL 5026392, at *3 (Minn. Ct. App. Oct. 24, 2011) (citing *Schmitz v. Rinke, Noonan, Smoley, Deter, Colombo, Wiant, Von Korff, and Hobbs, LTD*, 783 N.W.2d 733, 738 (Minn. Ct. App. 2010)). As such, Western Thrift must still meet the expert-affidavit requirements of § 544.42 to succeed on its breach of contract claim. *See Mosby v. Engh*, No. A05-901, 2006 WL 4643133, at *3-4 (Minn. Ct. App. May 2, 2000) ("Even if [the plaintiff] were able to prove the existence of the attorney-client relationship and the terms of the contract without an

expert, proving that [the defendant]'s actions constituted a breach would require expert testimony.").

Judge Ericksen determined that Western Thrift's allegations "necessarily require an understanding of the scope of an attorney's professional duties when representing a client in a lawsuit" and held that expert testimony was necessary for Western Thrift to prove up its case. Order, July 31, 2012, at 6. Because Western Thrift's breach of contract claim requires expert testimony to establish a prima facie case, Western Thrift was required to comply with the expert affidavit requirements of § 544.42 as set forth in Judge Ericksen's Order. The record as submitted to this Court contains no evidence that Rucci was served with the O'Neill Affidavit or any other expert affidavit meeting the requirements of § 544.42. Accordingly, because Western Thrift failed to comply with the requirements of § 544.42 and Judge Ericksen's July 31 Order, Western Thrift's breach of contract claim should be dismissed along with its negligent legal malpractice claim.

### III. CONCLUSION

Based upon the foregoing, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Docket No. 47) be **DENIED** and the action be **DISMISSED WITH PREJUDICE** for failing to comply with the expert-affidavit requirements of Minn. Stat. § 544.24 and Judge Ericksen's July 31, 2012 Order.

Dated: July 9, 2013

s/ Tony N. Leung
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Western Thrift & Loan v. Rucci*
File No. 11-cv-3644 (JNE/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **July 24, 2013**.