# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| WESTERN THRIFT & LOAN, | Civil No. 11-cv-3644 (JNE/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| SEBASTIAN RUCCI, | |
| Defendant. | |

Thomas P. Kane & Shushanie E. K. Liesinger, Hinshaw & Culbertson LLP, 2000 Accenture Tower, 333 South Seventh Street, Minneapolis, MN 55402, for Plaintiff; and

Sebastian Rucci, 401 East Ocean Boulevard, Suite 1040, Long Beach, CA 90802, *pro se* Defendant.

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Plaintiff Western Thrift and Loan's ("Western Thrift") Motion for Summary Judgment (ECF No. 47). This motion has been referred to the Magistrate Judge for report and recommendation to the district court under 28 U.S.C. § 636 and Local Rule 72.2(b). The parties consented to a waiver of the hearing. (ECF No. 65.) Notwithstanding the inexplicable conduct exhibited by Defendant Sebastian Rucci ("Rucci") in representing Western Thrift, this Court will recommend that Plaintiff's Motion for Summary Judgment (ECF No. 47) be denied because a genuine issue of material fact exists with respect to the but-for causation required in a Minnesota legal-malpractice action.

## I.    BACKGROUND

### A.    The Underlying Action

In October 2007, R & D Financial Solutions, Inc., together with its owners Dan Pullis and Robert Maki (collectively, "Underlying Plaintiffs"), commenced a suit against Homeowners Lending Corporation ("Homeowners") and Western Thrift (collectively, "Underlying Defendants") in the United States District Court for the District of Minnesota, Court Filing No. 07-CV-4306 (DSD/JJG) ("Underlying Action"). (ECF No. 51-1.) Western Thrift's chief legal counsel Mark Trafton hired Aaron Davis of Patterson, Thuente, Skaar, and Christensen, P.A. ("Patterson Thuente") to represent both of the Underlying Defendants. (Compl. ¶ 15, ECF No. 1.) According to Western Thrift, Homeowners assumed full responsibility for defending the Underlying Action pursuant to the service agreement between Western Thrift and Homeowners. (Compl. ¶¶ 17-18; *see* ECF No. 51-2, ¶ 7.5.)

### B.    Rucci's Representation of Western Thrift

In February 2009, Homeowners fired Patterson Thuente and hired Rucci to represent the Underlying Defendants. (*Id*. ¶ 19.) Rucci understood that he was hired to represent *both* Homeowners and Western Thrift. (Rucci Dep. 209:22-25, ECF  No. 51-8; *see* Compl. ¶¶ 21-22.) Western Thrift paid Rucci a retainer fee totaling $25,000.00. (ECF No. 51-34 at 2-3.) After Rucci was hired, Western Thrift received no further communication concerning the Underlying Action until January 2010, when it received a motion for default judgment from the Underlying Plaintiffs. Rucci never attempted to

contact Western Thrift while the Underlying Action was in litigation. (*See* Rucci Dep. 82:19-87:2.)

Meanwhile, Rucci encountered difficulty being admitted in the District of Minnesota. Rucci's motion for admission *pro hac vice* was denied. (ECF No. 51-12 at 3.) Rucci was then unable to obtain local counsel in accordance with Local Rule 83.5, and his subsequent request for additional time was denied. (ECF No. 51-14 at 2.) At no point did Rucci tell Western Thrift that he had not been admitted in Minnesota. (Rucci Dep. 136:10-137:16.) Rucci believed that Homeowners was keeping Western Thrift informed of the proceedings. (*Id.*)

On May 14, 2009, Homeowners, through Rucci, filed for bankruptcy in the Central District of California, which caused an automatic stay in the Underlying Action under 11 U.S.C. § 362(a). (ECF No. 51-15 at 2.) Through the bankruptcy process, Rucci hoped to remove the Underlying Action to the Central District of California, where he is admitted to practice and thereby could commence defending Western Thrift. (Rucci Dep. 132:1-133:11.) The Underlying Plaintiffs moved to remand the Underlying Action to the District of Minnesota. On September 1, 2009, the bankruptcy judge granted the motion, remanding the action to Minnesota and lifting the automatic stay. (ECF No. 51-27 at 2, 5.) Rucci never notified Western Thrift of Homeowners's bankruptcy proceedings and his plans to remove the Underlying Action to the Central District of California. (Rucci Dep. 176:16-178:2.) Rucci believed that Western Thrift would have been notified of the bankruptcy proceedings as Homeowners's creditor. (*Id.*)

After the stay was lifted and the Underlying Action recommenced in Minnesota, Rucci took no further part in the litigation, despite the fact that he was still the Underlying Defendants' attorney of record. (*Id.* 159:14-160:18.) At this point, given Homeowners's bankruptcy and Western Thrift's status as a creditor therein, Rucci believed that continued representation of both Homeowners and Western Thrift constituted a conflict of interest. (*Id.* 183:6-184:17.) Yet, Rucci never informed Western Thrift of the conflict. (*Id.* 188:5-16.)

### C. Motion for Default Judgment

Litigation in the Underlying Action continued. Neither Rucci nor Western Thrift attended the pretrial conference for the Underlying Action. (Order Granting Default J. 5, ECF No. 51-32.) The Underlying Plaintiffs subsequently moved for default judgment against all Underlying Defendants on January 21, 2010. (*Id.* at 4.) Unlike previous filings and correspondence, this motion was served on Western Thrift. (ECF No. 51-31 at 4.) The motion was the first notification Western Thrift received of the Underlying Action since Homeowners retained Rucci and "completely surprised Western Thrift." (Compl. ¶ 42.) After receiving the motion, Trafton contacted Rucci and arranged for Western Thrift's current counsel, Hinshaw & Culbertson, LLP ("Hinshaw & Culbertson"), to enter an appearance for the Underlying Defendants. (*Id.* ¶ 43.)

Through its new counsel, Western Thrift opposed the motion, arguing that default judgment was inappropriate because its conduct in the Underlying Action was "the result of lack of communication, miscommunication and a mistaken belief that it was represented by counsel." (Def.'s Mem. in Opp'n 16, Underlying Action, No. 07-cv-4306

(DSD/JJG), ECF No. 94.) In his May 10, 2010 order granting default judgment, United States District Judge David S. Doty noted that "a party is responsible for the actions and conduct of his counsel" and "impute[d] Rucci's failure to defend [the Underlying Action] to Western Thrift." (Order Granting Default J. 5-6.) Judge Doty did not address Western Thrift's claim that it had a meritorious defense, emphasizing that "where the conduct of a party amounts to willful misconduct, the existence of a meritorious defense does not prohibit default judgment." (*Id.* (quoting *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996).) Judge Doty granted the Underlying Plaintiffs' motion and entered default judgment against Western Thrift. (*Id.* at 6.)

On February 18, 2011, Judge Doty found the Underlying Defendants jointly and severally liable to the Underlying Plaintiffs for damages in the amount of $98,891.52. (ECF No. 51-33 at 25.) In addition, the Underlying Defendants were jointly and severally liable for the Underlying Plaintiffs' costs and attorneys' fees in the amount of $150,781.80. (*Id.*) Western Thrift subsequently settled with the Underlying Plaintiffs for $215,000. (ECF No. 51-36.) Western Thrift paid $257,532.89 in attorneys' fees to Hinshaw & Culbertson for representation in the Underlying Action. (ECF No. 51-38).

### D.    The Present Action

On December 20, 2011, Western Thrift filed the instant suit against Rucci, alleging negligence and breach of contract stemming from Rucci's representation of Western Thrift in the Underlying Action. Specifically, Western Thrift alleges that Rucci's negligent representation and breach of the contract for legal representation caused default judgment to be entered against Western Thrift in the Underlying Action.

On January 30, 2013, Western Thrift filed the instant motion for summary judgment. Western Thrift argues that "even though [it] had a meritorious defense [in the Underlying Action], this Court entered default judgment against [it] on a punitive basis, because of Rucci's failures." (Pl.'s Mem. in Supp. 1, ECF No. 50.)

Rucci opposes the motion, asserting that his conduct was not negligent because (1) he employed a legitimate litigation strategy and (2) when that strategy was unsuccessful, he could no longer represent Western Thrift following the remand because of a conflict of interest. (Def.'s Mem. in Opp'n 19, ECF No. 57; Rucci Dep. 183:6-184:17.) Rucci also argues that his actions did not proximately cause Western Thrift's damages. (Def.'s Mem. in Opp'n 13-17.)

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant has the burden of demonstrating that no genuine issue of material fact remains to be decided. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When a motion for summary judgment has been made and supported by the pleadings and affidavits, the burden shifts to the party opposing the motion to demonstrate that a disputed issue of material fact remains. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

**B.     Western Thrift's Claims Against Rucci**

To succeed on its claims[1] against Rucci, Western Thrift must show: (1) the existence of an attorney-client relationship between Western Thrift and Rucci; (2) Rucci's acts constituted negligence; (3) Rucci's acts were the proximate cause of Western Thrift's damages; and (4) but for Rucci's conduct, Western Thrift would have been successful in its defense of the Underlying Action. *See Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686, 692 (Minn. 1980).

### 1. An Attorney-Client Relationship Existed Between Western Thrift and Rucci

The existence of an attorney-client relationship is a question of fact that depends on the circumstances and communications between the parties. *In re Paul W. Abbott Co.*, 767 N.W.2d 14, 18 (Minn. 2009). The parties do not dispute that Rucci was retained to represent both Homeowners and Western Thrift in the Underlying Action. In fact, Rucci admits he represented both Homeowners and Western Thrift. (Rucci Dep. 209:22-25.) Therefore, by Rucci's own admission, there is no genuine issue of material fact concerning the existence of an attorney-client relationship between Rucci and Western Thrift.

---

[1] In Minnesota, legal malpractice and breach of the attorney/client contract are different names for the same cause of action. *See DeMartini v. Stoneberg, Giles & Stroup, P.A.*, No. A11-649, 2011 WL 5026392, at *3 (Minn. Ct. App. Oct 24, 2011) (citing *Schmitz v. Rinke, Noonan, Smoley, Deter, Colombo, Wiant, Von Korff & Hobbs, LTD*, 783 N.W.2d 733, 738 (Minn. Ct. App. 2010)).

## 2. Rucci's Representation of Western Thrift Was Negligent

Next, Western Thrift must establish the standard of care Rucci owed and demonstrate that he breached that standard through negligent acts. *Wartnick v. Moss Barnett*, 490 N.W.2d 108, 112 (Minn. 1992). An attorney owes a duty of care to each of his clients. *See Gillespie v. Klun*, 406 N.W.2d 547, 557 (Minn. Ct. App. 1987). Expert testimony is generally required to establish the standard of care and breach for a legal malpractice claim. *Noske v. Friedberg*, 713 N.W.2d 866, 874 (Minn. Ct. App. 2006).

### a. Rucci Owed a Duty to Western Thrift

Rucci concedes that he was hired to represent both Homeowners and Western Thrift. (Rucci Dep. 209:22-25.) He argues, however, that his duty of care extends only to Homeowners because he was retained by Homeowners. This argument is without merit. Rucci admits he represented both Homeowners and Western Thrift. (Rucci Dep. 209:22-25.) Thus, by his own admission, Rucci owed a duty to both Homeowners and Western Thrift.

The existence of an attorney-client relationship gives rise to fiduciary duties. "The attorney is under a duty to represent the client with undivided loyalty, to preserve the client's confidences, and to disclose any material matters bearing upon the representation of these obligations." *Rice v. Perl*, 320 N.W.2d 407, 410 (Minn. 1982) (emphasis omitted) (quoting Ronald E. Mallen & Victor B. Levit, *Legal Malpractice* § 121 (2d ed. 1981)). As Western Thrift's counsel, Rucci owed Western Thrift the duty "to communicate . . . whatever information he obtain[ed]

that may [have] affect[ed] the interests of his client in respect to the matters entrusted to him." *Selover v. Hedwall*, 184 N.W. 180, 181 (Minn. 1921) (citing, *inter alia*, *Baker v. Humphrey*, 101 U.S. 494 (1879)).

### b. Rucci Breached His Duty to Western Thrift

Western Thrift claims that Rucci breached his duty "to keep Western Thrift informed of all pertinent matters, so that Western Thrift could make informed decisions, and protect its own interests if necessary." (O'Neill Aff. 6.) In particular, Rucci had a duty to inform Western Thrift that (1) his application to appear *pro hac vice* was denied, (2) he was unable to secure local counsel, (3) he received a pretrial conference notice after the Underlying Action was remanded to Minnesota, (4) he could no longer represent Western Thrift because of the conflict with the bankruptcy action, (5) he could not appear at the pretrial conference because he had not been admitted in Minnesota, and (6) he received the Underlying Plaintiffs' motion for default judgment. (*Id.* at 6-7.) Each of these individual pieces of information affected Western Thrift's interests in the Underlying Action, the defense of which Western Thrift had entrusted to Rucci. *See Rice*, 320 N.W.2d at 410; *Selover*, 184 N.W. at 181.

Furthermore, Minnesota Rule of Professional Conduct 1.4(a) provides, in pertinent part, that a lawyer shall:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent . . . is required . . . ;
> (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished; [and]

> (3) keep the client reasonably informed about the status of the
> matter.

It is axiomatic that "a violation of the Rules of Professional Conduct is not intended to provide a basis for civil liability." *Ness v. Gurstel Chargo, P.A.*, --- F. Supp. 2d ----, 2013 WL 1176060, at *9 n.10 (D. Minn. Mar. 21, 2013) (quoting *Maus v. Toder*, 681 F. Supp. 2d 1007, 1016 (D. Minn. 2010)). "The Rules may, however, 'be evidence of breach of the applicable standard of conduct.'" *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 628 (8th Cir. 2009) (quoting Minn. R. Prof. Conduct, Scope). Where fiduciary duties arise from the existence of an attorney-client relationship, violation of the attorney's duty to disclose material information is actionable. *See STAR Centers, Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn. 2002).

Rucci has presented no evidence that he contacted Western Thrift before the motion for default judgment. In fact, he affirmatively states that there was no such contact. (Rucci Dep. 81:20-82:5.) Moreover, he concedes that he had an obligation to inform Western Thrift that he was no longer able to represent it after the case was remanded to Minnesota, (Rucci Dep. 210:2-6), and that "in hindsight, it might have been smart" to keep Western Thrift informed of his difficulties being admitted in Minnesota, (*id.* 120:7-13).

Nevertheless, Rucci argues that he did not breach his duties to Western Thrift because he counted on Gerald Sandler, Homeowners's president, to "pass on" the information to Western Thrift and had "no reason not to believe that this

[information] wasn't passed on from [Sandler] to Western [Thrift]." (Def.'s Mem. in Opp'n 14.) Rucci claims that Sandler told him that Western Thrift was aware that Rucci was unable to be admitted to represent it in Minnesota. (Rucci Dep. 136:21-137:5, 149:24-150:6, 184:18-185:5.) Conversely, Sandler asserts that he did not communicate with Western Thrift about Rucci's admission status, the Underlying Action, or Homeowners's bankruptcy proceedings. (Sandler Dep. 83:18-22, 90:3-6, ECF No. 51-9.) Sandler thought *Rucci* was keeping Western Thrift informed about the Underlying Action, (*id.* 83:3-4), and Sandler's only communication with Western Thrift involved Rucci's payment, (*id.* 105:4-24).

Whether Sandler was communicating with Western Thrift does not create an issue of material fact concerning any breach by Rucci. Even if Rucci and Sandler had implicitly understood that Sandler would serve as an intermediary between Rucci and Western Thrift, that implicit understanding neither permits Rucci to abdicate his duties nor rectifies his utter failure (1) to keep his client reasonably informed about the status of the Underlying Action and (2) to communicate to Western Thrift the information he had that may have affected Western Thrift's interests in that matter. Instead, he left this essential attorney function to Sandler, a man who was not Western Thrift's attorney and who, especially after Homeowners's bankruptcy filing, had little to no interest in Western Thrift's outcome in the Underlying Action. Rucci's communications were wholly inadequate, and he breached his duty to keep Western Thrift informed about the status of the Underlying Action.

Western Thrift also claims that Rucci was negligent and breached the duty he owed Western Thrift because he failed to take the necessary steps to be admitted in Minnesota, secure substitute local counsel, and protect Western Thrift from having default judgment entered against it. (O'Neill Aff. 6.) Rucci argues that his representation of Western Thrift was not negligent because he attempted to provide adequate representation by removing the case to California. (Def.'s Mem. in Opp'n 14.) Rucci relies on *Fontaine v. Steen*, which held that an ineffective legal strategy does not establish negligence per se. 793 N.W.2d 672, 678-79 (Minn. Ct. App. 2009). This argument misses the point. Western Thrift does not allege negligence based on Rucci's unsuccessful attempt to remove the underlying Action to California; rather, it alleges that Rucci was negligent by failing to represent Western Thrift *after* the remand.

Rucci also argues that, after the Underlying Action was remanded to Minnesota, he no longer could represent both Western Thrift and Homeowners because Western Thrift was a creditor in Homeowners's bankruptcy action. This limitation, however, does not eliminate Rucci's duty as Western Thrift's attorney to notify Western Thrift of the conflict of interest. Rucci failed to keep Western Thrift informed of the status of the Underlying Action despite the requirements of the Rules of Professional Conduct and his fiduciary obligations to his client. Accordingly, the Court concludes that Rucci breached the duty he owed to Western Thrift as its attorney and was therefore negligent.

### 3. Rucci's Negligence Proximately Caused Western Thrift's Damages

An attorney's negligent act is the proximate cause of an injury "if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others . . . even though he could not have anticipated the particular injury which did happen." *Wartnick*, 490 N.W.2d at 113. Whether Rucci's conduct proximately caused Western Thrift's damages is a question of fact that must be demonstrated by expert testimony. *Id.* at 115; *Fontaine*, 759 N.W.2d at 677. "Causation is usually a fact issue for the jury, but may be decided as a matter of law when reasonable minds can arrive at only one conclusion." *Gustafson v. Chestnut*, 515 N.W.2d 114, 116 (Minn. Ct. App. 1994) (internal citations omitted).

Western Thrift's expert opines that Rucci's breach proximately caused Western Thrift's damages. (O'Neill Aff. 7, ECF No. 51-37.) The Court agrees. It is the only conclusion that reasonable minds can reach. Rucci failed to fulfill his fundamental duty to keep Western Thrift informed of material developments that both directly and adversely affected its interests in the Underlying Action. When granting default judgment to the Underlying Plaintiffs, Judge Doty "impute[d] Rucci's failure to defend this case to Western Thrift," and ordered default judgment on that basis. (Order Granting Default J. 6.) As a result of the default judgment, Western Thrift was ordered to pay damages and attorneys' fees to the Underlying Plaintiffs in the amount of $249,673.32.[2] (ECF No.

---

[2] Western Thrift later settled with the underlying Plaintiffs for $215,000.

51-33 at 25.) Western Thrift also incurred $257,532.89 in additional attorneys' fees in defending the motion for default judgment. (Pl.'s Mem. in Supp. 28.)

Rucci argues that Western Thrift's (a) failure to contact Rucci for an update on the Underlying Action and (b) knowledge that Rucci could not be admitted *pro hac vice* in Minnesota constituted intervening and superseding causes. For an intervening cause to be considered superseding, it must "actively work to bring about a result which would not otherwise have followed from the original negligence; and . . . not have been reasonably foreseeable by the original wrongdoer." *Wartnick*, 490 N.W.2d at 113. An intervening event that is a "normal, foreseeable consequence" of the negligent conduct is not a superseding cause. *Id.* at 114.

### a. Western Thrift Had No Duty to Contact Rucci

Rucci asserts that it was unforeseeable that his negligent representation would cause damage to Western Thrift because Western Thrift never contacted him for an update on the Underlying Action. In other words, as best this Court can discern, Rucci argues that no news is good news. This argument is without merit. Whether Western Thrift decided to contact Rucci has no bearing on whether Rucci satisfied his independent obligation to keep Western Thrift apprised of the status of the Underlying Action. Rucci has failed to provide any authority suggesting that a client has an affirmative duty to contact its attorney. Moreover, Western Thrift took immediate action to secure new counsel and oppose the motion for default judgment as soon as it became aware of it. Western Thrift's actions did not bring about a result that would not have otherwise occurred. Indeed, despite Western Thrift's best efforts, Rucci's negligent representation

resulted in default judgment being entered against it. Therefore, Western Thrift's "failure" to contact Rucci is not an intervening and superseding cause.

### b. Western Thrift Was Not Aware of Rucci's Inability to Be Admitted *Pro Hac Vice*

Rucci also argues that Western Thrift was aware of Rucci's inability to be admitted *pro hac vice* in Minnesota. In support of this argument, Rucci argues the following: (1) Western Thrift received the order denying Rucci's application for admission; (2) Western Thrift sent a representative to attend at least one bankruptcy hearing in California; and (3) Western Thrift stated in a motion to remove the Underlying Action to California that Rucci was not admitted in Minnesota. (*Id.* at 13-16.) Each of these allegations is either immaterial or unsupported by the record.

### i. There Is No Evidence to Support Western Thrift's Receipt of the Order Denying Rucci's *Pro Hac Vice* Motion

Rucci asserts that, after he replaced Patterson Thuente as Western Thrift's attorney, Patterson Thuente "sent their files to Western [Thrift], including the order denying Rucci's *pro hac vice* motion." (*Id.* at 6.) To support this assertion, Rucci cites to an April 3, 2009 letter from Patterson Thuente to Homeowners and Western Thrift. (ECF No. 51-7 at 2.) The letter states that, on March 5, 2009, Patterson Thuente sent Rucci and Western Thrift copies of "all files and records" entered in the Underlying Action. (*Id.*) Yet, Magistrate Judge Jeanne Graham denied Rucci's motion to appear *pro hac vice* on March 26, 2009—three weeks later. (ECF No. 51-12 at 3.) Therefore, the files Western Thrift received from Patterson Thuente could

not have contained the March 26 order denying Rucci's motion to appear *pro hac vice*. Rucci has offered no other explanation or evidence that Western Thrift otherwise received the order denying his *pro hac vice* application.

### ii. Sergei Klimow's Appearance at a Bankruptcy Hearing Is Immaterial

Although Western Thrift was a creditor in Homeowners's bankruptcy, Rucci has presented no evidence that Western Thrift received any notices as part of the bankruptcy action. The record shows that Western Thrift was not served with documents pertaining to the bankruptcy. Indeed, all of the bankruptcy filings were sent directly to Rucci as Western Thrift's counsel of record in that matter. (*See* ECF No. 51-15 at 16; ECF Nos. 51-22 to -27.) Rucci also confirmed that he did not send bankruptcy filings to Western Thrift. (Rucci Dep. 234:4-6.)

Rucci argues that the appearance of Sergei Klimow, a regulation and compliance consultant in California, on behalf of Western Thrift at a bankruptcy hearing shows that Western Thrift was aware that Rucci could not represent it. But, there is no evidence to support the proposition that any knowledge Western Thrift had of the bankruptcy meant that Western Thrift also knew of Rucci's non-admission in Minnesota. Klimow testified in his deposition that Western Thrift asked him to attend a Homeowners bankruptcy hearing to represent Western Thrift's interests as a creditor in the bankruptcy, but he could not remember exactly who asked him to go. (Klimow Dep. 57:18-63:9; 71:3-9.) Klimow testified that he had no recollection whether he reported back to Western Thrift after the hearing, (*id.* 62:25-63:3; 68:16-19), no knowledge of the Underlying Action,

and he was unaware at the time that the Underlying Action had been remanded to Minnesota, (*id.* 61:17-22).

Klimow's presence at the bankruptcy hearing on behalf of Western Thrift shows only that Western Thrift was aware of the *bankruptcy*. His presence does not demonstrate Western Thrift's knowledge of the material facts that led to the entry of default judgment. There is no evidence that Klimow knew: (1) Rucci could not be admitted in Minnesota, (*id.* 49:2-5); (2) Rucci was not communicating with Western Thrift, (*id.* 49:9-11); or (3) the Underlying Action had been remanded to Minnesota, (*id.* 61:1-25). Given that Klimow had no knowledge of Rucci's admission status in Minnesota, his appearance in California cannot impute such knowledge to Western Thrift.

Rucci cannot manufacture a genuine issue of material fact based on Klimow's momentary involvement in the bankruptcy. Therefore, resolving all facts in favor of Rucci, there is no genuine issue of material fact that suggests the default judgment could have been prevented based on any communications Klimow could have had with Western Thrift.

### iii. Western Thrift Had No Knowledge of the Motion to Remove the Underlying Action to California

Rucci asserts that Western Thrift moved to transfer the Underlying Action to California because "the Minnesota District Court denied [Western Thrift] their chosen out-of-state counsel . . . [and] [Western Thrift is] without legal representation." (Def.'s Mem. in Opp'n 16.) Technically, this is true; Western Thrift did, through Rucci in his capacity as its attorney, file a motion to remove the Underlying Action to California. (*See*

Motion to Transfer Adversary Proceeding at 3, *In re Homeowners Lending Corp.*, No. 8:09-ap-01378-RK (Bankr. C.D. Cal. July 21, 2009), ECF No. 9.) Rucci neglects to mention, however, that he prepared the motion without input from his client. (Rucci Dep. 151:4-16.) Rucci then asked his friend, Ishmail Amin, to sign the motion given the status of Homeowners and Western Thrift as debtor and creditor, respectively, in the bankruptcy action. (*Id.*) Amin did not communicate with Western Thrift. (*Id.* 151:21-23.) It is at best disingenuous to suggest that this motion generates a genuine issue of material fact as to whether Western Thrift was aware of Rucci's inability to be admitted in Minnesota. The motion for removal "filed by Western Thrift" imputes no knowledge onto Western Thrift.

Based on the above and viewing all facts in a light most favorable to Rucci, Western Thrift's actions were not intervening and superseding causes, and reasonable minds can arrive only at the conclusion that Rucci's negligence proximately caused Western Thrift's damages.

### 4. Whether Western Thrift Would Have Been Successful in the Underlying Action but for Rucci's Negligence Remains a Genuine Issue of Material Fact

In addition to proximate causation, a claimant must also prove *but-for causation* to prevail in a legal-malpractice suit under Minnesota law. *See Togstad*, 291 N.W.2d at 692. Western Thrift must prove that it would not have sustained damages *but for* Rucci's negligence. Western Thrift's expert affidavit asserts that, but for Rucci's actions, Western Thrift would have secured counsel who could be admitted in Minnesota and prevented the default judgment, and, consequently,

Western Thrift would not have been liable to the Underlying Plaintiffs for damages, costs, and attorneys' fees resulting therefrom. (O'Neill Aff. 6-7.) Further, Western Thrift would not have incurred additional attorneys' fees to oppose the motion for default judgment.

The expert affidavit, however, does not address whether Western Thrift's defenses to the Underlying Action would have succeeded on the merits. In order to demonstrate but-for causation in a claim of attorney malpractice, the plaintiff must show that the underlying case "*could have* been won at trial—essentially, that there was a *winable* [sic] case-within-a-case." *Rouse v. Dunkley & Bennett*, 520 N.W.2d 406, 409 (Minn. 1994) (emphasis in original). It is difficult to prove whether the case-within-a-case could have been victorious without "the benefit of a fact-finder's determination as to whether the plaintiff would have succeeded in the underlying action." *Id.* Thus, but-for causation is a determination usually reserved for the jury. *Id.* Western Thrift has not pointed the Court towards a single legal malpractice case wherein a court granted summary judgment *for the plaintiff*. In granting default judgment against Western Thrift, Judge Doty specifically noted that "the existence of a meritorious defense does not prohibit default judgment." (Order Granting Default J. 6 (quoting *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996)). Judge Doty granted the Underlying Plaintiffs' motion based solely on Rucci's "willful misconduct" and did not address the merits of Western Thrift's defenses. *Id.* In short, the merits of the Underlying Action were not determined by either Judge Doty or an independent fact-finder. Whether Western Thrift could have succeeded

in the Underlying Action notwithstanding Rucci's negligence remains a genuine issue of material fact. Accordingly, summary judgment should be denied.

### 5. No Issue of Material Fact Exists Concerning Western Thrift's Damages

Although recommending that summary judgment be denied, the Court includes the following discussion on damages in the interest of completeness. In an action for attorney malpractice, the injured party may recover its damages once negligence and causation (proximate and but-for) have been established. *Virsen v. Rosso, Beutel, Johnson, Rosso & Ebersold*, 356 N.W.2d 333, 336 (Minn. Ct. App. 1984). These damages may be the result of an adverse verdict or a settlement agreement. *First Bank of Minn. v. Olson*, 557 N.W.2d 621, 624-25 (Minn. Ct. App. 1997). The injured party may also recover any attorneys' fees that were necessitated by the conduct of the negligent attorney. *Hill v. Okay Constr. Co.*, 252 N.W.2d 107, 121 (Minn. 1977). The amount of damages, however, is often speculative and normally an issue for the fact-finder. *Poplinksi v. Gislason*, 397 N.W.2d 412, 415 (Minn. Ct. App. 1986).

In the instant case, there is no dispute as to the amount of damages. The Underlying Plaintiffs were awarded a judgment for $98,891.52 in damages and $150,781.80 in costs and attorneys' fees. (ECF No. 51-33 at 25.) Western Thrift ultimately settled with the Underlying Plaintiffs for $215,000. (ECF No. 51-36 at 3.) In addition, Western Thrift claims $257,532.89 in attorneys' fees that it incurred opposing the motion for default judgment. (Pl.'s Mem. in Supp. 28.)

If Western Thrift had been successful in defending the Underlying Action, it would not have incurred attorneys' fees to defend against the default judgment or entered into the settlement following the default judgment. Western Thrift paid $25,000.00 to Rucci; $215,000.00 in the settlement of the Underlying Action; and $257,532.89 in attorney's fees to Hinshaw Culbertson for a total of $497,532.89. After careful review of Western Thrift's affidavit, the Court determines that the claimed attorneys' fees are reasonable. Therefore, no genuine issue of material fact exists as to the amount of damages to be awarded to Western Thrift.

## III.    CONCLUSION

Based upon the foregoing, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 47) be **DENIED**.


Dated: September 3, 2013                    s/ Tony N. Leung
                                       Tony N. Leung
                                       United States Magistrate Judge
                                       District of Minnesota

                                       *Western Thrift & Loan v. Rucci*
                                       File No. 11-cv-3644 (JNE/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly

appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **September 18, 2013**.